SWAGGERTY v. LILLIE et al. (two cases).
No. 1369.

Court of Appeal of Louisiana, First Circuit.
Oct. 3, 1934.

Rownd & Warner, of Hammond, for appellants.

Jos. M. Blache, Jr., of Hammond, for appellees.

LE BLANC, Judge.

These two suits were consolidated for trial in the lower court as the demands in each case arise out of the same automobile accident.

S. C. Swaggerty prosecutes one of the suits for himself individually and for and on behalf of his minor children, Ocie, Leonard, Tolvie, and Louise. The claim he presents is for damages to his automobile in the sum of $45.-65 and for a doctor's bill of $30 for medical services to his wife and children. The claim on behalf of his children is for personal injuries alleged to have been sustained by each in the following amounts: Ocie, $750; Leonard, $300; Tolvie, $150; and Louise, $100. Mrs. Swaggerty's suit is for damages for personal injuries alleged to have been sustained by her, and which she fixes at $350.

The petition in each case charges negligence on the part of Mrs. Charles Lillie, one of the defendants, who it is alleged was driving her husband's automobile at the time, in running into the Swaggerty car in the intersection at Holly street and Merry avenue, in the city of Hammond, on February 3, 1932. Mr. Charles Lillie, the alleged owner of the car, is also made defendant in both suits. It is alleged that the Swaggerty car reached the intersection first, going at a moderate rate of speed, and that, as it attempted to go on, having arrived at a point more than halfway across, the Lillie car came on into the intersection, driven at an excessive rate of speed, and that, despite the efforts of the driver of the Swaggerty car to avoid being struck, the other car did run into it, tearing into the right front fender with such terrific force that it caused a second impact as the sides of the two automobiles swung together.

The defense in both cases is that Mrs. Lillie was driving her car in a careful and prudent manner at a rate of speed not exceeding fifteen miles per hour, and that it was after she had entered the intersection and reached a point approximately halfway therein the Swaggerty car, which it is alleged was being driven by Leonard Swaggerty, a minor, 15 years of age, at an excessive rate of speed, entered the intersection, with no attempt being made to stop or slacken the speed, and struck the Lillie car on the right front door and fender, causing damage thereto in the sum of $70. Assuming the position of a plaintiff in reconvention, Charles Lillie prays for judgment against the plaintiff S. C. Swaggerty for the amount of the damages alleged to have been sustained by his car.

The lower court rendered judgment dismissing the demands of the plaintiffs in both suits and also rejecting the reconventional demand presented by Charles Lillie. The plaintiffs have appealed. The defendant Charles Lillie is apparently satisfied with the judgment as rendered, as he has not answered the appeal, and in brief before this court his counsel makes no reference whatever to the claim in reconvention and merely asks that the judgment of the lower court be affirmed.

The Swaggerty car was traveling north on Holly street and the Lillie car east on Merry avenue. The testimony satisfies us that Mr. Swaggerty himself was driving his car. With him were his wife and six children, whose ages ranged from 1 year to 15 years. With Mrs. Lillie in the other car was one of her friends, Mrs. A. B. Stinson.

Mr. Swaggerty and his witnesses, members of his family in the car with him, testify that their car entered the intersection first and was halfway across when the Lillie car appeared next to them; that he was driving on his right-hand side of the road in the intersection and tried to turn his car sharply to the right to avoid being struck, but could not do so. They all say that the force of the impact threw their car eastward in a ditch, some twenty yards away; the Lillie car landing in the same ditch a good distance back of theirs. They all speak of the Lillie car going "pretty fast"; Mrs. Swaggerty being the only one to estimate the rate of speed, which she says was twenty-five or thirty miles per hour.

Mrs. Lillie and Mrs. Stinson both say that their car was not going more than ten or fifteen miles an hour. Mrs. Lillie had gone to get Mrs. Stinson, who lived just around the block, and they had just turned the corner to go eastward into Merry avenue. Mrs. Lillie does not say that she entered the intersection first, but her testimony is that she had passed the center of the intersection when her car was struck by the Swaggerty car. She says that she looked both ways, did not see the other car, and then started across. The other car was evidently approaching from the south, and both Mrs. Lillie and Mrs. Stinson say that there is a hedge on that side of the intersection.

There appears then an irreconcilable conflict in the testimony of the occupants of the respective cars as to which was going the faster and which had entered the intersection first. The testimony of disinterested witness-

es, however, seems to favor the version of the defendants' witnesses, and, if it does not produce the preponderance of testimony on their side, at least serves to offset what advantage the plaintiffs may have had in the number of witnesses on theirs. The testimony of Robert Duke and of Frances Carter, the latter a negro, tends to show that the Swaggerty car was not proceeding at the slow rate of speed testified to by their witnesses as it entered the intersection, and that of Thomas W. McKneely, which impresses us very favorably, is rather convincing that the Lillie car, which was going east, entered the intersection first, and that the other car, going north, was going at a rather rapid rate of speed. Mr. McKneely was sitting on his front porch, right at the intersection of the two streets, and had a good view of the whole accident. He says further that, when Mr. Swaggerty noticed the other car "had the street," he did not have time to stop his car, and he struck the other car in the center of the rear door. In connection with this part of his testimony, it is perhaps important that we refer to the testimony of the young Swaggerty boy, who, when asked why his father did not stop his car, answers: "He couldn't stop. The brakes were not good." If this young boy knew of the condition of the brakes on his father's car, it is reasonable to assume that his father also knew that they were defective, and with this knowledge he was held to a greater degree of care in driving it, and especially so over an intersection such as the one he was attempting to cross.

In so far as it rejected the demands of the plaintiffs, we find no error in the judgment appealed from, and it is therefore affirmed.